IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| CHRISTOPHER KORTLANDER, CUSTER BATTLEFIELD MUSEUM, INC., and HISTORICAL RARITIES, INC., | CV 10-132-BLG-RFC |
| Plaintiffs, | ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |
| vs. | |
| BUREAU OF LAND MANAGEMENT, DEPARTMENT OF THE INTERIOR and KEN SALAZAR, in his official capacity of Secretary of Interior, Defendants. | |

I.   INTRODUCTION

The Freedom of Information Act (FOIA), 5 U.S.C.A. § 552, requires every

federal agency to make its records available to the public upon proper request,

except for those records specifically described in the nine exemptions contained in

the statute.  5 U.S.C.A. § 552(b).  The statute also provides for the bringing of an

action in a District Court of the United States to compel production of material by

a federal agency.  5 U.S.C.A. § 552(a)(4)(B).  Courts are instructed to determine

1

the matter de novo and are granted discretion to conduct *in camera* review of

withheld material.  5 U.S.C.A. § 552(a)(4)(B).

At the request of Plaintiff, BLM has produced certain records and asserted

certain exceptions to the FOIA requests.  The parties have filed cross motions for

summary judgment.  The Court has conducted a thorough review of this matter,

including an *in camera* review of thousands of pages of documents, and is

prepared to rule.

## II.   FACTUAL BACKGROUND

Plaintiff Christopher Kortlander submitted seven separate FOIA requests to

Defendant beginning on December 12, 2009, and ending on September 20, 2010.

Defendant asserts that their response to those requests was complicated and

delayed by a pending criminal investigation which was related to Plaintiff and the

records and information he was seeking under FOIA.

On December 12, 2009, Plaintiff filed a FOIA request seeking documents,

notes, interviews, correspondence, . . . related to Christopher Kortlander,

Historical Rarities, Inc., and Custer Battlefield Museum for the time period of

January 2003 through December 11, 2009.  On December 22, 2009, Deborah

DeBock, the State Records Administrator, Freedom of Information Act, and

Privacy Coordinator for BLM's Montana State Office, contacted Plaintiff to confirm his personal mailing address.  During the telephone conversation Plaintiff amended the time frame of his FOIA request to January 1996 through December 11, 2009.  Defendant responded with a letter dated December 23, 2009, acknowledging the amended request and seeking written clarification of the time frame for the amended request.

On December 24, 2009, Plaintiff submitted a second FOIA request and it was treated as a clarification of his previous request.  Plaintiff advised that "[t]he action of the OIG to the BLM Billings Law Enforcement division" was the information he was requesting for the time frame of 1995 through 1996.  On December 29, 2009, the FOIA request was forwarded to BLM's Office of Law Enforcement Security (OLES) for a response.  The FOIA coordinator with OLES advised that potentially responsive records were retired to the Federal Records Center.

In a letter dated January 28, 2010, the Montana BLM State Office responded to the first and second FOIA requests, and requested a second clarification of the time frame for the records search.  This letter also provided information related to coordination with the Office of Law Enforcement Services (OLES) in Boise, Idaho to obtain information pertaining to the Office of Inspector

3

General (OIG) documents.  The letter advised Plaintiff that the requests were in the "complex track" since the requested records were located in two different offices (BLM Montana State Office and OLES in Boise) and the Federal Records Center.

On March 2, 2010, the BLM in Boise, Idaho provided a "no records" response for records relative to the requested time frame, as to any action taken by the OIG to the BLM Law Enforcement Division in Billings.  The BLM in Boise referred Plaintiff to OIG in Washington, D.C.  Ten pages of records, related to a similar 2005 FOIA request submitted by Plaintiff for the same investigation, were released in response to Plaintiff's first and second FOIA requests.  The BLM in Boise advised Plaintiff of his 30-day right to appeal its March 2, 2010 response to the FOIA Appeals Officer in Washington, D.C.

On March 9, 2010, Plaintiff contacted  Deborah DeBock and advised he was displeased with the "no records" response from the OIG investigation.  DeBock and Plaintiff discussed a 6-month time frame to process his FOIA requests. Plaintiff later advised on March 19, 2010, that the time frame was unacceptable.

On January 25, 20101, Defendant received a third FOIA request from Plaintiff seeking information, investigation notes, laboratory tests and results, emails, and other information pertaining to items that were sent to the U.S. Fish

and Wildlife Service National Forensics Lab.  Plaintiff clarified that he was
requesting all information pertaining to BLM Agent Cornell's request for all
testing for all items submitted to the National Forensics Lab (NFL) from a few
months before March 31, 2005 and ending in August 2009.  Those records are
with the Fish and Wildlife Service.

During a telephone conference on February 3, 2010, it was agreed between
BLM and the Fish and Wildlife Service that any NFL records were Fish and
Wildlife Service records.  Therefore, any NFL records in the possession of BLM
would be copied and transferred to the Fish and Wildlife Service for a release
determination under FOIA.  It was further agreed that the Montana State BLM
Office would search for any additional records in response to Plaintiff's third
FOIA request.

On February 4, 2010, Defendant wrote to Plaintiff and acknowledged
receipt of the third FOIA request.  On February 12, 2010, Plaintiff called Deborah
DeBock and requested that the records be released in chronological order.
Plaintiff stated he was looking for records not previously provided to him.
Plaintiff reported that the Fish and Wildlife Service lab advised that some items
may have gone to the DOE lab for testing.  Therefore, he requested the DOE lab
information as well.

5

On February 16, 2010, Defendant sent a letter notifying Plaintiff that responsive FOIA records that originated with the Fish and Wildlife Service had been located and those records, along with the FOIA request, would be forwarded to the Fish and Wildlife Service for a release determination.

On March 10, 2010, Plaintiff submitted a fourth FOIA request seeking all information, notes, lab tests, . . . pertaining to the investigation of Plaintiff.  The time frame for the request was from 1995 to December 2009.  Plaintiff stated the FOIA request was in addition to, but did not replace, all previous requests.  The search sought the personnel files for BLM Agent Lee Lingard, and the files and records related to Robert Nightengale and Jason Pitsch, who were reportedly federal informants, BLM Agents Brian Cornell and Bart Fitzgerald, and Fish and Wildlife Service Agent Doug Goessman.  Plaintiff also sought a fee waiver.  The request regarding Goessman was emailed to the Fish and Wildlife Service on March 26, 2010.

On March 19, 2010, Plaintiff submitted a fifth FOIA request.  He advised that a six-month time frame was unacceptable and requested expedited processing of his FOIA requests.

On March 26, 2010, and April 14, 2010, Plaintiff contacted Deborah DeBock by telephone.  They discussed that BLM's criminal investigation had

6

been closed and the status of the Fish and Wildlife Services' response to his FOIA request, and that BLM had no control over another agency's records.  There was also discussion of fees and Plaintiff was faxed the Department of Interior's regulations on categories and waivers.  Finally, a discussion was had about why the BLM's FOIA responses had been delayed.

On April 30, 2010, the BLM sent a letter to Plaintiff addressing his five FOIA requests and notified Plaintiff that all FOIA requests had been aggregated into one file and additional time would be required to process the request.  A request was made that Plaintiff provide payment of the processing fees related to his requests or justification for a waiver of the fees.  Plaintiff was advised that the requests would not be processed until fee issues were resolved.

On May 8, 2010, Plaintiff submitted his sixth FOIA request.  On May 28, 2010, Defendant sent Plaintiff a letter granting a partial fee waiver for all records, except the OIG records.  Plaintiff was advised of his right to appeal his request for a fee waiver to the FOIA Appeals Officer in Washington, D.C.

An additional letter was sent on June 7, 2010, notifying Plaintiff that his FOIA requests were deemed perfected on May 10, 2010.  Plaintiff was notified that since Lee Lingard was employed by the Housing and Urban Development (HUD), his BLM personnel records had been transferred to that agency.  Plaintiff

was advised to submit a FOIA request to HUD to obtain Lingard's personnel records.  With regard to Nightengale and Pitsch, they were not federal employees. As to Brian Cornell, he had been transferred to the Office of Law Enforcement and Security Services (OLES), and the FOIA request was forwarded to OLES for a response.  As to Bart Fitzgerald, he was working for the BLM Arizona State Office, and the pertinent FOIA requests were forwarded to Arizona.  Finally, Doug Goessman was an employee with Fish and Wildlife Service, the FOIA request was forwarded to that agency.

On June 9, 2010, the FOIA requests were transferred to the BLM Arizona State Office and BLM OLES.  On June 18, 2010, the BLM Arizona State Office advised that no responsive records were located during the search of the official personnel folder of Bart Fitzgerald.  Fitzgerald had been contacted to conduct a search for responsive records in his law enforcement investigation files.  A followup letter would be sent as soon as that search was complete.  Plaintiff was advised of his right to appeal the adequacy of the search to the FOIA Appeals Officer in Washington, D.C.

The BLM Arizona State Office sent a followup letter on June 28, 2010, advised that Fitzgerald reported that any responsive files or information that he may have possessed were left at the Montana State BLM Office.  Plaintiff was

8

advised of his right to appeal the adequacy of the search to the FOIA Appeals

Officer in Washington, D.C.

On July 19, 2010, the BLM OLES responded to the FOIA requests for

records related to the official personnel file of former BLM Special Agent Brian

Cornell.  BLM OLES advised that no responsive records were located.  Plaintiff

was advised of his right to appeal the adequacy of the search to the FOIA Appeals

Officer in Washington, D.C.

Plaintiff submitted his seventh request for FOIA documents on September

20, 2010.  He requested all information that the Department of Interior had

concerning the investigation or prosecution of the following named individuals or

entities:  Christopher S.  Kortlander, Historical Rarities, Inc., the Custer

Battlefield Museum, Inc., and the Elizabeth Custer Museum and Library, Inc.

Plaintiff further advised that the response to the request should "include all agent's

notes, reports, and Operations Plans, including all email communications within,

to or from your agents and agency concerning any aspect of this matter.  The

information requested includes, but is not limited to all information, investigation

notes, laboratory tests and results, emails, phone conversation notes of every type

involved in the matters identified above regarding the person or businesses of

Christopher Kortlander (and any of his business interests including: Custer

9

Battlefield Museum, Historical Rarities, and the Garyowen Subway, C-store, and Conoco gas station).  Further information received from any and all informants and information sources providing information of any type whatsoever in the matter requested."  The time frame specified for this request appears to be 2003 until 2009.

On November 19, 2010, Defendant responded to the seventh FOIA request and advised the request had been aggregated with the others.  Defendant also reported to Plaintiff that the requests were placed into the complex track and responsive records would be released following appropriate review and consultation.

On February 20, 2011, Defendant provided 2,401 pages of documents in response to Plaintiff's requests; and on March 3, 2011, an additional 39 pages of responsive documents were provided.  Also, approximately 24 inches of additional documents were located by Defendant in a file marked as grand jury information. These were reviewed for disclosure and provided to Plaintiff very recently [*See Docs.  54 & 55*].

Deborah DeBock submitted a thorough declaration with the Court outlining the method of search used for obtaining all of the records requested by Plaintiff. Approximately 21 BLM personnel in the following locations contributed to the

search for records: Washington Office, Arizona State Office, Montana State Office, National Interagency Fire Center, Office of Law Enforcement and Security Services, Miles City Field Office, Glasgow Field Office, and Malta Field Office. Records identified as originating with the United States Fish and Wildlife Service were returned to that agency for a release determination.

## III.   ANALYSIS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).  An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson, v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Anderson*, 477 U.S. at 256-57.  Once the moving party has done so, the burden shifts to the opposing party to set forth specific facts showing there is a genuine issue for trial.  *In re Barboza*, 545  F.3d 702, 707 (9th Cir. 2008).  The nonmoving party "may not rely

11

on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Id.*

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Id.* The court should not weigh the evidence and determine the truth of the matter, but determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

Under FOIA the agency has the burden to show that it made an adequate search for records requested. The agency must demonstrate that it has conducted "a search reasonably calculated to uncover all relevant documents." *Lane v. Dept. of Interior*, 523 F.3d 1128, 1139 (9th Cir. 2008). The adequacy of an agency's search for documents under FOIA is reviewed under a standard of reasonableness. *Citizens Com'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995); *Church of Scientology Intl. v. U.S. Dept. of Justice*, 30 F.3d 224, 230 (1st Cir. 1994)(citing to *Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir. 1993)). The agency need not search every record system that may exist or conduct a perfect search. *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir.1991). "The crucial issue is not whether relevant documents might exist, but whether the agency's search was 'reasonably calculated to discover the requested documents.'" *Church of Scientology Intl.*, 30 F.3d at 230. The agency must show a good faith

12

effort to conduct a search for the requested records using methods which one can reasonably expect to produce the information requested. *Oglesby v. U.S. Dept. of Army*, 920F.2d 57, 68 (D.C. Cir. 1990).

In this case, the Court finds that the search made by the agency meets the requirements of FOIA. The search conducted was "a search reasonably calculated to uncover all relevant documents." *Lane v. Dept. of Interior*, 523 F.3d 1128, 1139 (9th Cir. 2008).

Approximately 21 BLM personnel searched agency records in eight different offices. There is no doubt the search was conducted in good faith. The searches included searches for hard copy files, electronic files including Law Enforcement Word software electronic records folder, photographs, patrol logs, handwritten notes were verified to be in the official files that were part of the search, and sign-in/sign-out sheets for evidence rooms and the evidence logs were searched. Lawnet was searched as it is the official law enforcement database that tracks law enforcement investigations as well as a search conducted for internal investigation records. Official personnel folders were searched for any reference to the subject investigation of Plaintiff or any reprimands related to Plaintiff. The Montana State Office Central Files were also searched.

Defendant has demonstrated that the documents underwent a thorough and careful analysis. If part of a document was exempt from release, the remaining portion was provided. All non-exempt portions were released unless inextricably intertwined with deliberative communications.

## A.    FOIA Exemptions

FOIA provides that a document can be withheld from the individual requesting the information if the information falls within one of the nine enumerated exceptions set forth in FOIA. 5 U.S.C.A. § 522(b); *Theriault v.U.S.*, 503 F.2d 390, 392 (9th Cir. 1974). The agency involved carries the burden of showing the records in question fall within the protection of one of the exemptions. *Lion Raisins, Inc. v. U.S.Dept. of Agriculture*, 354 F.3d 1072, 1079 (9th Cir. 2004); *Theriault*, 503F.2d at 392.

When asserting that requested information is exempt from disclosure, agencies usually follow the procedures prescribed in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). An agency may prepare a *Vaughn* index that provides the court with a method to analyze the propriety of the withholding in sufficient detail to show the applicability of the exemption. *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973). No precise form for a *Vaughn* index is dictated. The

primary purpose to "enable the court to make a reasoned, independent assessment of the claim[s] of exemption." *Id*. at 866-67.

A court may rely solely on government affidavits "so long as the affiants are knowledgeable about the information sought and the affidavits are detailed enough to allow the court to make an independent assessment of the government's claim." *Lion Raisins, Inc. v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir.2004). "If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, 'the district court need look no further.'" *Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir.1987) (quoting *Church of Scientology of Calif. v. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir.1979)).

If the court finds that the government affidavits are "too generalized," it may examine the disputed documents *in camera* to make a "first-hand determination of their exempt status." *Id.* (quoting *Church of Scientology*, 611 F.2d at 742). *In camera* inspection is "not a substitute for the government's burden of proof, and should not be resorted to lightly," due to the ex parte nature of the process and the potential burden placed on the court. *Church of Scientology*, 611 F.2d at 743; *Pollard v. FBI*, 705 F.2d 1151, 1153-54 (9th Cir. 1983). However, it may be appropriate if the "preferred alternative to *in camera* review--government testimony and detailed affidavits--has first failed to provide a

15

sufficient basis for a decision." *Id.* at 1154.  In *Church of Scientology*, the Ninth

Circuit held that the district court's *in camera* viewing of the disputed documents,

in combination with "somewhat conclusory" affidavits, constituted an adequate

factual basis, because the "small number of documents requested, and their

relative brevity, made these cases appropriate instances for exercise of the district

court's inspection prerogative."  611 F.2d at 743.

The *Vaughn* Index provided in this case was submitted with the DeBrock

Declarations describing the documents withheld and the reasons the exemptions

are asserted by the agency.  More than 2,440 pages of documents were provided

on a disc.  This Court conducted a complete and exhaustive *in camera* review of

all of the documents provided.

Plaintiffs argue extensively that the form of the *Vaughn* Index is

inappropriate.  The Court disagrees.  Defendants provided the Court with a method

to analyze the propriety of the withholding in sufficient detail to show the

applicability of the exemption and the enable the Court is able to make a reasoned,

independent assessment of the claim[s] of exemption."  *Vaughn v.  Rosen*, 484

F.2d 820, 826-27, 866-67 (D.C. Cir.  1973).

The FOIA exemptions are defined by statute as follows:

(b) This section does not apply to matters that are–

(1) (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

(2) related solely to the internal personnel rules and practices of an agency;

(3) specifically exempted from disclosure by statute (other than section 552b of this title), if that statute--
(A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;
(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an

unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual;

**1.     Withholding Under 5 U.S.C. § 552(b)(2) No Longer Applicable.**

The exemption contained in 5 U.S.C. § 552(b)(2) (sometimes referred to as Exemption 2) states that an agency need not provide under FOIA matters that are "related to the internal personnel rules and practices of an agency."  The Supreme Court recently ruled in *Milner v. Dept.  of Navy*, 131 S.Ct.  1259 (2001), that "personnel" means documents relating to human resources and employee relations. The Supreme Court noted that much of the basis for a (b)(2) exemption is covered in other exemptions under FOIA.

Defendant represents that they utilized Exemption 2 in conjunction with other exemptions.  Therefore, Exemption 2 is no longer at issue in this case.

## 2.    Withholding Under 5 U.S.C. § 552(b)(3) Regarding Grand Jury Information

The Exemption in 5 U.S.C. § 552(b)(3) provides for withholding of documents "specifically exempted from disclosure by statute. . . if that statute (A)(i) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld. . ."

Section 552(b)(3) "in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure, which bars public disclosure of matters before a grand jury, creates an exemption for documents that would reveal the nature of information before a federal grand jury."  *Sephton v.  FBI*, 78 Fed.Appx.  722, 724 n.3 (1st Cir. 2003).

Section 4 of the *Vaughn* Index addresses information redacted and describes the documents redacted with bates numbers based on § 552(b)(3) because they were grand jury documents, interviews of witnesses disclosing information in confidence about documents obtained through grand jury subpoenas, grand jury exhibit lists, and e-mail documents obtained through grand jury subpoenas and the like.

19

Additionally, approximately 24 inches of documents in a file marked grand jury were recently reviewed by BLM FOIA officers due to Rule 6(e) restrictions. The additional 24 inches of documents were analyzed and any information that was thought to be exempt from disclosure under the FOIA was redacted by the BLM.  The Court ordered that the redacted documents were to be provided to Plaintiff and Plaintiff's counsel. [*See Doc. 54.*] The United States filed a Supplement to the *Vaughn* Index [*Doc. 55*] regarding these specific documents and Plaintiffs responded [*Doc. 57*].  The Supplement to the *Vaughn* Index is discussed in greater detail below.

**3.      Withholding Under 5 U.S.C. § 552(b)(5) for Deliberative Process, Attorney Client and Attorney Work Product Privileges.**

Section 5 of the *Vaughn* Index describes documents that fall into FOIA. "Exemption 5 encompasses 'the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context.'" *Schlefer v.  U.S.*, 702 F.2d 233, 237 (D.C. Cir. 1983) (quoting *Taxation With Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981)).  Documents protected from disclosure under Exemption 5 generally fall into three categories: the deliberative process privilege, *Federal Open Market Committee v. Merrill*, 443

U.S. 340, 353 (1979); the attorney-client privilege, *Mead Data Central, Inc. v.*

*U.S. Dept. of Air Force*, 566 F.2d 242, 252-255 (D.C. Cir. 1977); and the attorney-

work product privilege, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975).

Plaintiffs are prevented by Exemption 5 from using FOIA to obtain

discovery that would not otherwise be entitled to receive in civil litigation.  FOIA

"was not designed to supplement the rules of civil discovery, and [a requester's]

right to obtain information is neither enhanced nor diminished because of its needs

as a litigant." *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1134-35 (4th Cir.

1977) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. at 143 n. 10).

Exemption 5 "covers recommendations, draft documents, proposals,

suggestions, and other subjective documents which reflect the personal opinions

of the writer rather than the policy of the agency." *Judicial Watch, Inc. v. U.S.*

*Dept. of Justice*, 306 F.Supp.2d 58, 69 (D.D.C. 2004) (quoting *Coastal Gas Corp.*

*v. Dept. of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)); *see also Assembly of the*

*State of Cal. v. U.S. Dept. of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992).

> The privilege has a number of purposes: it serves to assure
> that subordinates within an agency will feel free to provide
> the decision-maker with their uninhibited opinions and
> recommendations without fear of later being subject to
> public ridicule or criticism; to protect against premature
> disclosure of proposed policies before they have been finally
> formulated or adopted; and to protect against confusing the

> issues and misleading the public by dissemination of
> documents suggesting reasons and rationales for a course of
> action which were not in fact the ultimate reasons for the
> agency's action.

*Coastal States*, 617 F.2d 854, 866 (D.C. Cir. 1980).

 To qualify for withholding under this exemption, the material must be

predecisional and deliberative. *Natl. Wildlife Federation v. U.S. Forest Serv.*, 861

F.2d 1114, 1117 (9th Cir. 1988); *Judicial Watch*, *Inc.*, 306 F.Supp.2d at 69. A

document is considered predecisional "if it was prepared in order to assist an

agency decision in arriving at his decision, rather than support a decision already

made. . . Material is deliberative if it reflects the give-and-take of the consultative

process." *Petroleum Info. Corp. v. U.S. Dept. of Interior*, 976 F.2d 1429, 1434

(D.C.Cir. 1992) (citations and internal quotations omitted).

 Based upon the Court's review of the documents in this case, many of the

documents withheld are documents planning the undercover operation and

investigation which are predecisional and directly relate to the deliberative

process. Draft documents subject to revision or containing proposed changes fall

well within the deliberative process privilege. *See Natl. Wildlife Federation*, 861

F.2d at 1120-21. Additionally, many documents were subject to Exemption 5

because they including attorney-client and attorney work product privileges. This

includes written documents or memorandums containing legal advice, as well as client communications to its attorneys, email exchanges between clients and attorneys or amongst government attorneys, letters from the prosecutor to the agency about persons providing information with expectation of confidentiality, memorandums from agents to a prosecutor providing information requested by counsel, letters from attorney to witnesses about case information protected by attorney work product, regarding testimony before the grand jury, and information provided to the attorney by a witness with the expectation of confidentiality.

Defendant met its burden to withhold documents under the deliberative process, attorney work product and attorney client exemption asserted under § 552(b)(5).

4.   **Withholding under § 552(b)(6) (Exemption 6); (b)(7)(C) (Exemption 7(C)); and (b)(7)(D) (Exemption 7(D)) for Personal Privacy and Confidential Informant Exemptions.**

a.   **Exemption 6**

Exemption 6 exempts disclosure of information in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

The Ninth Circuit found that the phrase "similar files" has a "broad" meaning.  *Forest Service Employees for Environmental Ethics* (hereafter *FSEEE*)

*v. U.S. Forest Service*, 524 F.3d 1021, 1025 (9th Cir. 2008) (quoting *U.S.Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982). The court found that "[g]overnment records containing information that applies to particular individuals satisf[ies] the threshold test of Exemption 6." *Id*. at1024 (quoting *Van Bourg, Allen, Weinberg &Roger v. NLRB*, 728 F.2d1270, 1273 (9th Cir. 1984)). The court then noted that names, addresses and other information about federal employees may be withheld, citing to *U.S. Dept. of Def. v. FLRA*, 510 U.S. 487, 494 (1994) (home addresses of federal employees could be withheld under Exemption 6).

The test in applying Exemption 6 then requires a determination as to whether the disclosure of the employees' identities would constitute a "clearly unwarranted" invasion of their personal privacy. In analyzing this, a court must balance the public interest in disclosure against the interest Congress intended to protect under the exemption.

> First, "the only relevant 'public interest'" is the extent to which disclosure would "'contribut[e] significantly to public understanding of the operations or activities of the government.'" *Id.* (emphasis omitted) (quoting *Reporters Comm.*, 489 U.S. at 775, 109 S.Ct. 1468). In other words, "information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct" is not the type of information to which FOIA permits access.

> Second, the reasons why the FSEEE seeks the identities of the Forest Service employees are irrelevant to our inquiry. "'[W]hether an invasion of privacy is warranted cannot turn on the purposes for which the request for information is made.'" *Id.* at 496, 114 S.Ct. 1006 (emphasis in original) (quoting *Reporters Comm.*, 489 U.S. at 771, 109 S.Ct. 1468). FOIA provides every member of the public with equal access to public documents and, as such, information released in response to one FOIA request must be released to the public at large. *Id.* (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)). Accordingly, we consider the consequences of disclosure of the employees' identities to the entire public.

A review of the records and after balancing the public interest in disclosure against the interest Congress intended to protect under this Exemption demonstrates that Exemption 6 was properly utilized in this case.

### b.    Exemption 7(C)

Exemption 7(C) provides even more protection than Exemption 6. Exemption 7(C) permits the withholding of "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

For Exemption 7(C) to apply, a threshold determination that the records were compiled for law enforcement purposes must be made. The bulk of the records at issue were compiled for law enforcement purposes as set forth in the

*Vaughn* Index.  The nature of Plaintiffs' FOIA requests also seek law enforcement investigatory records.

Courts addressing Exemption 7(C) have found that the stigma of being associated with a law enforcement investigation, the potential for harassment and potential to prejudice law enforcement personnel in carrying out law enforcement functions, generally outweighs the public interest.  *Sussman v. U.S. Marshal Service*, 494 F.3d 1106, 1115 (D.C. Cir.  2007) (Exemption 7(C) "protects the privacy interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants.")

The names and personal identifying information withheld under 5 U.S.C. § 552(b)(6) and (7)(C) in this case, including addresses, social security numbers, dates of birth, criminal histories, past addresses, private signatures, phone numbers, drivers license numbers, motor vehicle identification numbers, fax numbers, private e-mail addresses, credit card number, and eBay and Paypal identifiers are properly exempt under Exemption (b)6 and 7(C).

      c.     **Exemption 7(D)**

Exemption 7(D) provides protection for "records or information compiled for law enforcement purposes" which "could reasonably be expected to disclose the identity of a confidential source, including a state, local, or foreign agency or

26

authority or any private institution which furnished information on a confidential

basis, and in the case of a record or information compiled by criminal law

enforcement authority in the course of a criminal investigation . . . , information

furnished by a confidential source."  5 U.S.C. § 552(b)(7)(D).

Exemption 7(D) affords the most comprehensive protection of all of the

FOIA law enforcement exemptions.  *Billington v. U.S. Dept. of Justice*, 301

F.Supp.2d 15, 21 (D.D.C. 2004).  Congress and courts have clearly manifested a

"robust" interpretation of Exemption 7(D) in order to ensure that "confidential

sources are not lost through retaliation against the sources for past disclosure or

because of the sources' fear of future disclosure."  *See Ortiz v. HHS*, 70 F.3d 729,

732 (2d Cir.  1995) (Exemption 7(D) is meant to protect confidential sources from

retaliation that may result from the disclosure of their participation in law

enforcement activities.)

Under Exemption 7(D), unlike Exemptions b(6) and b(7)(C), no balance of

private and public interest is applicable to the confidential source or source

information.  *Jones v. F.B.I.*, 41 F.3d 238, 247 (6th Cir. 1994); *McDonnell v. U.S.*,

4 F.3d 1227, 1257 (3d Cir. 1993).

27

Also, Exemption 7(D) provides that information provided by a confidential source is also protected.  This is the case even if the source's identity is known by the requester.  *Ferguson v. F.B.I.*, 957 F.2d 1059, 1068 (2d Cir. 1992).

In this case, several confidential sources were interviewed and documents were prepared based on the interviews or information obtained from them. Express assurance of confidentiality was requested and/or provided by law enforcement.  Therefore, Exemption 7(D) is a proper basis for withholding the names, identifiers, and information provided by confidential sources.


5.    **Withholding under § 552(b)(7)(E).**

Exemption 7(E) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information. . . (E) would disclose techniques and procedure for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure would reasonably be expected to risk circumvention of the law, . . ."

Exemption 7(E) was utilized in this case to exempt undercover operations and planning documents as well as techniques not generally known to the public. Most of the documents in this case falling under this exemption were withheld due

28

to the fact that an undercover operation was planned and put into effect, including

undercover names, consensual monitoring and the use of some techniques not

known to the public.  This information is the type of information that would

disclose techniques that could reasonably be expected to risk circumvention of the

law.  Knowing how law enforcement plans and executes undercover operations is

the type of information that, if made public, could allow for planning criminal

activity to avoid detection.  This Exemption was appropriately applied in this case.


### 6.    Supplement to *Vaughn* Index

A supplement to the *Vaughn* Index was filed by the United States on August

23, 2011.  [*Doc. 55*.]   Plaintiffs responded and asserted objections.  [*Doc. 57*].

The supplement to the *Vaughn* Index consists of 4,770 pages of responsive

documents from the BLM containing Bates No.  BLM002502-007271.  The Court

has conducted an *in camera* review of the documents.  The United States is

claiming exemptions under 5 U.S.C. § 552(b)(3), (b)(6), (b)(7)(C), and (b)(7)(D).

The documents in the supplement to the *Vaughn* Index were obtained through

grand jury subpoenas for law enforcement purposes and relate to a criminal

investigation of the Plaintiff and his associated businesses.   The United States has

again certified that they responded to Plaintiffs' requests in good faith.

### a.   FOIA Exemptions Claimed 5 U.S.C. § 552(b)(6), (b)(7)(C)

As discussed *supra*, Exemption 6 exempts disclosure of information in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) provides even more protection than Exemption 6.  Exemption 7(C) permits the withholding of "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

These Exemptions are used extensively throughout the records.  The withheld information includes private names, addresses, phone numbers, IP addresses, email addresses, Ebay login names, addresses and other personal information with Ebay and PayPal.

The names, addresses, phone numbers, login names, and other personal identifier information of federal employees as well as third parties who may be mentioned in documents contained within the files has been found appropriate to withhold as the privacy interest in avoiding embarrassment, stigma, and harassment that arises from public association with a criminal investigation outweighs the public interest in the agency's performance of its duties.

Exemption 7 has been interpreted as even more protective of privacy for such personal information held in records compiled for law enforcement purposes. All of the records in the supplement to the *Vaughn* Index were compiled as part of a law enforcement investigation. Names of law enforcement and third parties mentioned in or part of a law enforcement investigation have a substantial interest in concealing their identity. Disclosing the names of law enforcement may seriously prejudice their effectiveness in conducting their investigations, or subject them to harassment and animosity. The disclosure of third parties mentioned in interview reports and other law enforcement documents may also expose them to harassment, reprisal, the stigma of being associated with a law enforcement investigation, and is likely to discourage future cooperation with law enforcement. Because of these concerns, it is necessary to withhold the names of law enforcement agents, third parties interviewed by law enforcement agents, and third parties mentioned in the disclosed documents, and identifying information.

**b.     FOIA Exemptions Claimed 5 U.S.C. § 552(b)(3)**

As set forth in greater detail *supra*, the Exemption in 5 U.S.C. § 552(b)(3) provides for withholding of documents "specifically exempted from disclosure by statute. . . if that statute (A)(i) requires that matters be withheld from the public in

such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld. . ."

Section 552(b)(3) "in conjunction with Rule 6(e) of the Federal Rules of Criminal Procedure, which bars public disclosure of matters before a grand jury, creates an exemption for documents that would reveal the nature of information before a federal grand jury." *Sephton v. FBI*, 78 Fed.Appx. 722, 724 n.3 (1st Cir. 2003).

The basis for the withholding of this information is that grand jury documents or information obtained from grand jury subpoenas will reveal the nature of the information before a federal grand jury, including interviews of witnesses disclosing information in confidence about documents obtained through grand jury subpoenas, grand jury exhibit lists, and e-mail documents obtained through grand jury subpoenas.

The information withheld under this Exemption including private names, addresses, phone numbers, IP addresses, email addresses, Ebay login names, address and other personal information associated with Ebay and PayPal, law enforcement names and direct phone numbers, AUSA names, and all records

associated with third parties and their associated businesses as described on the

Grand Jury Request (*See* Bates 2550).[1]

> **b.      FOIA Exemptions Claimed 5 U.S.C. § 552(b)(7)(D)**

Exemption 7(D) is discussed *supra*, and provides protection for "records or

information compiled for law enforcement purposes" which "could reasonably be

expected to disclose the identity of a confidential source, including a state, local,

or foreign agency or authority or any private institution which furnished

information on a confidential basis, and in the case of a record or information

compiled by criminal law enforcement authority in the course of a criminal

investigation . . . , information furnished by a confidential source."  5 U.S.C. §

552(b)(7)(D).   Exemption 7(D) provides that information provided by a

confidential source is also protected.  This is the case even if the source's identity

is known by the requester.  *Ferguson v.  F.B.I.*, 957 F.2d 1059, 1068 (2d Cir.

1992).

In this case, several confidential sources were interviewed and documents

were prepared based on the interviews or information obtained from them.

-----

[1]Records that are associated with businesses not found to be owned by Plaintiffs and not requested in Plaintiffs' FOIA requests have been withheld in full, including Ebay transactions, PayPal reports, and financial records, and a letter to an attorney that is not written to, by, or copied to Plaintiffs and does not relate to Plaintiffs.

Express assurance of confidentiality was requested and/or provided by law enforcement.

## IV.   CONCLUSION

Defendant has met the burden of showing that they made an adequate search for records requested and sufficiently conducted "a search reasonably calculated to uncover all relevant documents." *Lane v. Dept. of Interior*, 523 F.3d 1128, 1139 (9th Cir. 2008). Defendant has undoubtedly shown a good faith effort in conducting a search for the requested records using methods which one can reasonably expect to produce the information requested. *Oglesby v. U.S. Dept. of Army*, 920F.2d 57, 68 (D.C. Cir. 1990).

After spending hours upon hours upon hours conducting an exhaustive *in camera* review of the documents in this case, it is apparent that the United States is entitled to summary judgment. Records have been produced to Plaintiffs and the Court is satisfied that the redactions are appropriate under FOIA. Although documents were not provided to Plaintiffs as quickly as Plaintiffs would have liked, considering the volume of documents and the circumstances described in the DeBock Declaration, the amount of time is not completely unreasonable and any delay certainly was not intentional or malicious. There is no doubt that requests

34

involving this much documentation are going to take a considerable amount of time to compile and review.

Therefore, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment [*Doc. 17*] is **DENIED**.  Defendant's Motion for Summary Judgment [*Doc. 36*] is **GRANTED**.  All remaining pending motions are **MOOT**.

The Clerk of Court shall notify the parties of this Order, enter Judgment in favor of Defendants and close this file.

DATED this 13th day of September, 2011.

*/s/ Richard F. Cebull*_____
RICHARD F. CEBULL
U.S. DISTRICT COURT JUDGE